## WAHLER v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. March 18, 1910.)

RAILROADS (§ 327*)—CROSSINGS—COLLISIONS—CONTRIBUTORY NEGLIGENCE.

A pedestrian, when 15 feet from a railroad crossing, looked for trains, and he either saw a train and kept on his way, or he did not see it because he was negligent. He looked again, and saw a train approaching when he was about to step on the track, and he thought that he could cross ahead of the train, and when he found that he could not cross he tried to retrace his steps, and was struck by the train. The gates were open when he first looked for a train. *Held*, that he was guilty of contributory negligence as a matter of law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1043–1051; Dec. Dig. § 327.*]

Action by August Wahler against the Long Island Railroad Company. There was a dismissal of the complaint, and plaintiff's exceptions were ordered heard in the first instance by the Appellate Division. Judgment for defendant ordered.

Argued before HIRSCHBERG, P. J., and WOODWARD, THOMAS, JENKS, and BURR, JJ.

Henry M. Dater (George F. Elliott, on the brief), for plaintiff.
William C. Beecher, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

THOMAS, J. Metropolitan avenue runs north and south. The defendant's railway crosses it obliquely, but in a general easterly and westerly direction. The plaintiff was struck by defendant's train, moving westerly. The plaintiff walked in a generally southerly direction until he came to the gates, and, finding them raised, turned and walked southeasterly across Metropolitan avenue. His evidence as to looking is somewhat confused; but it is certain that he did look to the right and to the left, and that he did look to the left, first, while walking upon the sidewalk toward the center of Metropolitan avenue and hence towards defendant's tracks; and it is certain, also, that when he was 15 feet from the track on which the train came he looked to the left and saw no train, and the fact seems to be that just as he was stepping over the first rail of the track of the oncoming train he looked to the left again, and saw the train about 100 to 200 feet away. Then, to use his words:

"When I saw this engine 150 feet away, I thought I could make it, get over safe for the minute, and I found I couldn't make it, and tried to make my way back, and lost myself, and that is the last thing I remember for three or four days. I got excited."

In another place the witness explains himself:

"When I got to the point where the gates were on Metropolitan avenue, just before I came to the crossing, the gates were up. I got as far as the gates, and had to turn to my left to get in the street; got from the street about 15 feet from the tracks, and I seen; glanced to my left, and I took another glance, and got to about the first rail; glanced to my right and heard a rumbling, and I heard a bell, and I seen an engine coming right on top of me; glanced to my right and to my left, and I seen an engine coming on top of me, and for a minute I didn't know what to do; for a minute I thought I could make it."

While on account of the curve, the view to the right was limited, the view to the left was unlimited for a mile or two, and it was utterly impossible for the plaintiff to have looked with any discernment when he was 15 feet from the track without seeing that the train was approaching and that there was probably not time for him to make the passage in front of it. Although it is claimed that the upraised gates gave assurance that no train was approaching, he did not rely wholly upon that, but used his eyes to aid a safe crossing.

It must be inferred that, if he looked, he saw what would appear to a person looking. A train of cars advancing toward him on a track intersecting his way was not an object to elude his sight, if he did look; and if he did not see such object it is evident that his look was grossly careless and his care shallow. It seems, also, that as he was about stepping over the rail he saw the train, and that he thought he "could make it" and kept on his way. The train was then some 150 feet away, and there was nothing to prevent his stepping back and allowing the train to pass. It is true that, according to his evidence, the gates were closed about this time; but there is no pretense of any other diversions, or any possible obstruction to his stepping back, nor was he so confused at the moment but that he thought he "could make it," and it was after he found that making it was perilous that his confusion arose.

For the reason that he looked when 15 feet from the track, and either saw the train and kept on his way, or did not see it through his negligence, and that he looked again and saw the train when he was about to step upon the track, and negligently concluded to attempt passage in front of it, I think that the complaint was properly dismissed, and that judgment should be ordered for defendant, with costs. All concur.